Filed 1/26/21  P. v. Do CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VINCENT H. DO,<br><br>    Defendant and Appellant. | F078095<br><br>(Super. Ct. No. 1489507)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Cavan M. Cox II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Vincent Do was charged with murder and child abuse after a minor in his care suffered a fatal brain injury.  He claimed the child suffered the injury during a fall while

hiking.  The case proceeded to trial and a jury acquitted him of murder but found him guilty of involuntary manslaughter and child abuse.

On appeal, Do raises a single claim alleging the trial court erred in prohibiting evidence of a non-testifying witness's hearsay statement corroborating Do's claim about the fall.  We affirm.

## BACKGROUND

**Charges**

The Stanislaus County District Attorney charged Do with two crimes: Murder (Pen. Code,[1] § 187, subd. (a); count I), and child abuse (§ 273a, subd. (a); count II).  Count II included an enhancement for personally inflicting great bodily injury on a child under age five (§ 12022.7, subd. (d)).

**Trial Evidence**

Do operated a home for autistic children.  According to him, part of his work with the children included hiking and exercise.  At some point, he began caring for J., a two-and-a-half-year-old girl.  About one week after he began caring for her, J. suffered a serious brain injury resulting in hospitalization and her eventual death.

In a statement to law enforcement officers, Do explained that he was holding J.'s hand during a hike at a local park when they both slipped and fell.  They first fell backward, then J. stood up and fell forward.  He carried her to the car and drove home, where J. fell asleep.  Several hours passed and she did not wake up.  Do realized he must have underestimated the fall and called 911 for help.  Medical personnel transported J. to the hospital but she did not survive.

Two witnesses testified and corroborated Do in fact regularly hiked with children.  Cell phone records discussed and introduced at trial confirmed Do's phone was in the park the morning he claimed the fall occurred.

---

[1] All undesignated code references are to the Penal Code.

2.

The medical examiner who conducted an autopsy testified to J.'s various injuries. J. had abrasions to her lip, nose, and knees. She also had bruising to one cheek, her upper arm, and both sides of her hips and pelvis. There was no evidence of external trauma to the head.

In the examiner's opinion, J.'s abrasions were consistent with a fall, the bruising was inconsistent with a fall, and the brain injury was unlikely to occur from a short, ground level fall. Overall, the bruising was consistent with the "pattern of a battered child." He believed treatment within an hour of the brain injury could have saved J.'s life and a delay of four to five hours would be a substantial factor in her death. He agreed the specific brain injury is difficult to perceive without training and would make a child appear sleepy.

A physician that treated J. at the hospital also testified. The physician largely echoed the medical examiner's testimony but added there were no other injuries to J.'s bones, neck, spine, skull, and internal organs. In his opinion, it was "[v]ery unlikely" a fall caused the brain injury.

A biomechanical engineer testified on Do's behalf. In her opinion, J.'s injuries, including the brain trauma, were consistent with falling. She added that falling straight backward and forward was unlikely to cause J.'s injuries, but if she fell while her hand was being held it would increase rotational forces and the likelihood of the brain injury.

**Verdict and Sentence**

Do was acquitted of murder but convicted of the lesser included offense of involuntary manslaughter (§ 192, subd. (b)). He was also convicted of child abuse as charged in count II. The jury found the great bodily injury enhancement true. He was sentenced to serve nine years in prison.

## DISCUSSION

Do claims the trial court violated his due process rights by excluding an eyewitness's out of court statement that "Mr. Do and [J.] were sliding down a hill or cliff

3.

made of dirt. Both [J.] and Mr. Do fell backwards." The eyewitness explicitly denied J. also fell forward. Do's counsel argued the statement was reliable because it was spontaneous, given to a law enforcement officer one day after the incident, and there was no "opportunity to fabricate [the] statement."

The trial court excluded the statement, concluding "it was [given] in response to a question," not fully "spontaneous," and "there's a[n in]sufficient showing of inherent reliability to allow the statement to come in without cross-examination." The court added the eyewitness's "percipient abilities [were] problematic. … [T]he fact that he's on the autism spectrum is problematic in both his ability to perceive and then relate what happened …."[2] Our careful review of the record leads us to conclude no constitutional violated occurred.[3]

" ' Few rights are more fundamental than that of an accused to present witnesses in his own defense. [Citations.] [But i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " [Citation.] Thus, '[a] defendant does not have a constitutional right to the admission of unreliable hearsay statements.' " (*People v. Ayala* (2000) 23 Cal.4th 225, 269 (*Ayala*); (*People v. Williams* (2016) 1 Cal.5th 1166, 1199.)

Nonetheless, "completely excluding evidence of an accused's defense theoretically could … impair an accused's due process right to present a defense." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103.) "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied

---

[2] The court also found it significant Do could move to continue the trial and secure the eyewitness's appearance at trial and noted the superficial inconsistency between the eyewitness denying J. fell forward and Do's claim she did fall forward.

[3] " ' "[W]e review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm." ' " (*People v. Brooks* (2017) 3 Cal.5th 1, 39.)

mechanistically to defeat the ends of justice." (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302 (*Chambers*).)  Some factors relevant to determining the admissibility and reliability of hearsay statements include:  Whether the statement was against interest; whether the statement was reasonably contemporaneous to the event; whether the statement was later retracted; to whom the statement was made; whether the statement was spontaneous; and whether the declarant will be subject to cross-examination.  (*Ayala, supra,* 23 Cal.4th at p. 270.)

In *Chambers, supra,* the Supreme Court found a due process violation where 1) the trial court excluded hearsay statements reciting a person's confession to the crime for which the defendant was charged, 2) the confessor testified at trial and plausibly retracted the confession, and 3) the defendant was not permitted to cross-examine the witness regarding the prior confession.[4]  (*Chambers, supra*, 410 U.S. at pp. 300-303.)  In so finding, the Court announced "no new principles of constitutional law.  Nor [did it] signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of … criminal trial rules and procedures."  (*Id.* at pp. 302-303.)  The holding was limited to the unique "facts and circumstances of [the] case," (*id.* at p. 303) including the circumstance the confessor was available and present to testify and submit to cross-examination.  (*Id.* at p. 301.)

This case is dissimilar.  The court here found the hearsay statement insufficiently reliable.  Notably, the court found the absence of spontaneity and cross-examination dispositive.  (See *People v. Garcia* (2005) 134 Cal.App.4th 521, 539 ["[w]itness availability [is] an important factor" in assessing admissibility of hearsay statements].)  The remaining indicia of reliability, in this case, do not alter the conclusion.[5]

---

[4] The defendant in *Chambers* was allowed to read the witness's confession into the record.  (*Chambers, supra,* 410 U.S. at p. 291.)

[5] Of the remaining factors identified in *Ayala*, only the apparent lack of retraction and the fact the statement was made within the context of a law enforcement interview

Do's remaining contention is that the excluded statement was trustworthy within the meaning of Evidence Code section 1370.[6] We disagree. His argument highlights the importance of potential cross-examination as a factor relevant to admissibility.

Evidence Code section 1370 provides the following three factors relevant to "trustworthiness":

> "(1) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.
>
> "(2) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.
>
> "(3) Whether the statement is corroborated by evidence other than statements that are admissible only pursuant to this section." (Evid. Code § 1370, subd. (b).)

The absence of cross-examination, however, renders it impossible on appeal to conclude the statement was not made "in contemplation of pending or anticipated litigation in which the declarant was interested," or that "the declarant [did not have] a bias or motive for fabricating the statement …."[7] As to the third factor, it is true the statement was corroborated by other evidence, bringing us to our final point.

---

would weigh in favor of reliability. (See *Ayala, supra,* 23 Cal.4th at p. 270.) Do otherwise makes little, if any, attempt to explain why the eyewitness had no opportunity to fabricate the statement or how it was spontaneous. The trial court appropriately considered these factors in its ruling.

[6] This section provides a hearsay exception for statements narrating, explaining, or describing "the infliction or threat of physical injury upon" the declarant. (Evid. Code, § 1370, subd. (a).) Trustworthiness is a foundational prerequisite. The exception does not apply in this case and is simply offered as a reference to codified factors relevant to determining the reliability of statements.

[7] Beyond cross-examination, there is no indication in the record the eyewitness's statement was tested in any manner, including by probing questions from the interviewer.

Even were we to assume the statement at issue here was reliable, it was properly excluded because it was not critical to the defense. (See *Chambers, supra,* 410 U.S. at p. 302 ["exclusion of … critical evidence" coupled with antiquated rules denied due process]; *People v. Lightsey* (2012) 54 Cal.4th 668, 716 [acknowledging admissibility of hearsay statement hinges on "critical" need for evidence]; *Green v. Georgia* (1979) 442 U.S. 95, 97 ["excluded testimony was highly relevant to a critical issue," resulting in denial of fair trial].) Do's defense regarding a slip and fall accident was presented to the jury by his own statement to investigators and corroborated, in many respects, by J.'s injuries indicating she did, in fact, fall.

Each expert witness acknowledged the abrasions were consistent with a fall, as were some of the bruises. Importantly, each expert opined—albeit to varying and mostly dismissive degrees—a slip and fall could have caused the brain injury.

Do's defense was further corroborated by two other witnesses that made his claim about hiking with children highly plausible. Moreover, the cell phone records all but proved he was at the park with the children on the morning he claimed J. fell.

Indeed, the verdict is consistent with Do's defense. The jury rejected the murder charge and, with it, any suggestion Do acted with malice. The jury instead convicted him of involuntary manslaughter and child abuse. These convictions permitted the jury to find Do guilty if he was criminally negligent by not seeking medical intervention with

Potential answers to questions regarding the witness's bias, interest, or motive were apparently not explored during the interview.

haste.[8]  The criminal negligence theory was entirely consistent with Do's statement and thorough defense.[9]  Accordingly, we find Do was not denied due process.

## DISPOSITION

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:

HILL, P.J.

DETJEN, J.

---

[8] For involuntary manslaughter, the jury was instructed a person must act with criminal negligence, which the People alleged was "Failing to promptly get medical attention."  For child abuse, the jury was instructed a person must act with criminal negligence and willfully cause or permit a child to suffer injury.  As noted, the People also alleged Do personally inflicted great bodily injury (§ 12022.7, subd. (d)).  The court instructed the jury, "The phrase 'personally inflicts great bodily injury' means that someone in person, that is directly and not through an intermediary, causes the great bodily injury.  It may include the failure to act where action is required."  (See *People v. Warwick* (2010) 182 Cal.App.4th 788, 794-795 [personally inflicting injury includes "the failure to act where action is required"].)  Do does not challenge these instructions or the sufficiency of the evidence.

[9] Defense counsel concluded his argument as follows: "And I submit to you that Mr. Do is not guilty of murder.  He may be guilty of something else, but not murder.  It could be involuntary manslaughter.  It could be child abuse likely to create great bodily harm.  But it's not murder.  He is not guilty of murder."  It would defy logic to find a due process violation where the jury—in all likelihood—accepted the defense.

8.